IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| COMPREHENSIVE HEALTHCARE MANAGEMENT SERVICES, LLC d/b/a Brighton Rehabilitation and Wellness Center, | ) Case No. 2:21-cr-00079-RJC |
| and | ) |
| MT. LEBANON OPERATIONS, LLC d/b/a Mount Lebanon Rehabilitation and Wellness Center, | ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF MOUNT LEBANON AND BRIGHTON NURSING FACILITIES' MOTION FOR A NEW TRIAL UNDER RULE 33**

In opposing Mt. Lebanon and Brighton's motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, the government—after accusing the defense of "cherry picking" evidence to support its motion—ignores context, misinterprets legal standards, and otherwise refuses to look at the totality of the trial evidence. In so doing, it also studiously ignores the import of its position, which would lead both facilities to be excluded from participation in Medicare and Medicaid, causing their immediate closure. The loss of Mt. Lebanon and Brighton would deprive western Pennsylvania of over 600 jobs and upwards of 700 nursing home beds that will be impossible to replace, while displacing more than 580 residents many of whom have no obvious alternative living arrangements.

One would expect that, to justify this sort of upheaval, the government would at least have strong evidence of wrongdoing. But after sitting through the trial, the Court knows the weakness

of the government's evidence and, ultimately, the reality that the great weight of the testimony and documentary evidence admitted at trial militated against conviction for any defendant, corporate or individual. In the end, the trial evidence showed that the Department of Health ("DOH") surveys that the government focuses on largely *understated*, not overstated, PPD calculations and staffing levels. The Court should grant the Rule 33 motion.

## ARGUMENT

Because the government's arguments were largely addressed and rebutted by the original Rule 33 motion, this brief will not attempt a line-by-line refutation. Instead, it seeks only to highlight key flaws in the government's position. For the remainder, Mt. Lebanon and Brighton rely on the arguments and authorities in their opening Motion.

**A.     The government's attempt to cobble together evidence in support of the corporate convictions is unconvincing.**

The government pointedly lumps into the same sections its analysis of the evidence about both Mt. Lebanon and Brighton, even though they are separate entities, charged under very different purported schemes that are difficult to square with one another, each of which must each be convicted in their own right. The evidence against both defendants is fatally weak. But because the evidence against Mt. Lebanon is scant to non-existent, we'll start there.

**1.     The government continues to rely on liars and thieves to support Mt. Lebanon's conviction.**

The government takes umbrage at the Rule 33 motion's reference to a line from a movie, but in reality, saying that the government's star witness—Yochanan Naiditch—ever gave up being either a thief or a liar was charitable. After all, as Mt. Lebanon and Brighton pointed out in their opening brief, Mr. Naiditch stole thousands of dollars from Mt. Lebanon which he has yet to repay. (11/30/2023 Tr. 11:6–25, 59:13–16) And yet, the government continues to insist that the Court

should find Mr. Naiditch's testimony credible. For example, it says—among other things—the Court should believe him when he says that he did not work one Friday in November 2019 because, because of his religious beliefs, he could not work after sundown on the Sabbath. (ECF No. 421 at 10) The government neglects to mention, however, that Mr. Naiditch's commitment to honoring the Sabbath was, at best, intermittent. After all, he admitted on cross to having an affair with a co-worker after sundown on the Sabbath. (11/30/2023 Tr. 114:16–24) Apparently, Mr. Naiditch was sufficiently irreligious that he would break the Seventh Commandment on the Sabbath, but sufficiently devout that he would never deign to work on it. "Some people might call that chutzpah." *Arizona Free Entr. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 766 (2011) (Kagan, J., dissenting); *Williams v. State*, 190 S.E.2d 785, 785 (Ga. Ct. App. 1972) ("'The classic definition of 'chutzpah' is that quality enshrined in a man, who having killed his mother and father, throws himself upon the mercy of the court because he is an orphan.'"). The rest of Mr. Naiditch's testimony is similarly (if less colorfully) unbelievable. And this Court should refuse to credit any portion of it—as the jury apparently did in refusing to convict all the charged individual Mt. Lebanon employees including the facilities' administrator Susan Gilbert.

So too for Martha Stillwagon, one of the other "unindicted coconspirators" the government mentions in its brief, despite its claim that the actions of many unindicted employees could be used to convict both Brighton and Mt. Lebanon. Ms. Stillwagon joined Mr. Naiditch in pilfering money from Mt. Lebanon for their own benefit, not that of Mt. Lebanon. Conveniently, she—like Mr. Naiditch—only remained unindicted because the government gave them immunity. It is also notable that, despite her outsized role in this case as the FBI's confidential human source, the government mysteriously declined to call Ms. Stillwagon as a witness—despite continuing to attempt to bind Mt. Lebanon with her conduct.

3

Indeed, the only evidence against Mt. Lebanon the government points to other than Mr. Naiditch's testimony comes from Tracie Benson and Vivian Miller. But the government makes no effort to address the fact that Ms. Benson denied any wrongdoing and that Pennsylvania regulations allowed lunch hours to be counted towards PPD thresholds. (ECF No. 420 at 25) Nor does it even mention the axe Ms. Miller had to grind with Mt. Lebanon after being disciplined for making antisemitic comments in the office. (*Id.* at 25–26) Moreover, Ms. Miller's testimony was completely untethered to any specific time period, instead referring to "one random time on a day that [she didn't] recall" when she was asked to misreport hours. (11/29/2023 TR. 169:3–170:1) In other words, aside from the testimony of an admitted liar, thief, and cheater (in multiple senses of the word) the government has only the thinnest of reeds to argue even that a trier of fact had a basis to convict Mt. Lebanon. This is certainly not enough to withstand a motion for new trial under Rule 33.

### 2. The government's evidence against Brighton is similarly untethered to the conduct charged in the indictment.

The government's analysis on Brighton focuses mostly on the testimony and actions of Susan Harrington, a low-level clerk and scheduler who acknowledged making many errors that *undercounted* the actual nursing hours worked at Brighton, and secondarily on a few other witnesses. But again, the government fails to tie many if not most of the events and actions they testified about to any specific time period. (*See* ECF No. 420 at 26–27) That alone is enough to discount it.

As to Ms. Harrington in particular, the government also continues to misunderstand what it must prove beyond a reasonable doubt that conduct was willful. The government places heavy reliance on Ms. Harringon's testimony that certain information on staffing forms was "untrue," or "wasn't right," or was "wrong," (ECF No. 421 at 19), but the very case it cites supports this point

4

explains that this is not enough. Rather, a person must act "with knowledge that [her] conduct was, *in some general sense, 'unlawful,'*" not merely immoral. *See United States v. Starnes*, 583 F.3d 196, 210 (3d Cir. 2009); Third Circuit Model Criminal Jury Instructions § 5.05 (explaining that the government must prove that the defendant "knew that [his or her] conduct was unlawful or intended to do something that the law forbids"). Ms. Harrington's uncontested testimony was that she did not believe the way she filled out staffing sheets was criminal at all; not, as the government's brief suggests, that she was simply unaware of the statute she had violated. (12/1/2023 Tr. at 186:14-24)

Beyond that, as detailed in Mt. Lebanon and Brighton's opening brief, the evidence at trial belied the government's claim that there was an intention to defraud healthcare programs. For example, the government did not and could not rebut the defense's expert's testimony—buttressed by Ms. Harrington's own admissions on cross-examination—that nearly 80 percent of the time, mistakes on staffing sheets submitted to the Department of Health **underreported** staff time and, as a result, PPD levels. (12/12/2023 Tr. 156: 20–24) Indeed, Ms. Harrington herself testified that Brighton did not struggle with staffing or meeting PPD thresholds while she was at the facility. (12/1/2023 Tr. at 39:14-23, 104:11, 105:15, 108:4) Simply recounting isolated portions of the transcript and conclusory asserting that they prove willfulness does not make up for these deficiencies. Proving a willful effort to trick of deceive requires at least *some evidence* that one or more of the facilities' agents intended to deceive a health care program. But there was no such evidence.

As to the remaining witnesses, Mt. Lebanon and Brighton addressed each of them in its opening brief, explaining why they are not a basis for rejecting the new trial motion. (ECF No. 28 at 25, 27–28.)

5

**B.       The government misunderstands the legal standard applicable to a Rule 33 motion.**

Part of the reason that the government's efforts to rebut Mt. Lebanon and Brighton's factual arguments fall flat is that it persistently misunderstands the legal standard that applies to Rule 33 motions. Citing an out-of-circuit decision, the government claims that this Court can only reject testimony as incredible if it was "patently incredible or defies physical realities" and insists that it believes the trial evidence "supported [the corporate defendant's] verdicts." (ECF No. 421 at 4-5) But misconstrues the standard for a motion under Rule 33.

In considering a motion for a new trial, the Court is called not to "view the evidence favorably to the government" but to "exercise[ ] its own judgment in assessing the Government's case." *United States v. Delgado*, 367 F. Supp. 3d 286, 291 (M.D. Pa. 2019). And that includes, as we previously explained, the ability to reweigh the credibility of witnesses as a "thirteenth juror." (ECF No. 420 at 3) Thus, it is not enough, as the government persistently does throughout its brief, simply to point to evidence the jury *could* have relied on to support its verdict. The government must demonstrate why this Court should credit that evidence over the abundant contrary evidence and credibility issues that Mt. Lebanon and Brighton have pointed to. The government's brief fails to do so.

**C.       The government's efforts to enforce rules relevant exclusively to state regulatory decisions defy recent Supreme Court decisions.**

The government also persistently criticizes Mt. Lebanon and Brighton for purportedly relying on cases outside the healthcare fraud context. That misses the point.

Mt. Lebanon and Brighton have cited to cases in other contexts with respect to materiality and whether certain conduct was "in connection with" a healthcare program not only because such cases and the legal analysis are sufficiently analogous to be relevant to the court's analysis. But also because the federal appellate courts, and particularly the Supreme Court, have more broadly—

6

and very pointedly—trimmed the government's sails when it has attempted to stretch federal statutes beyond their reasonable limits. *E.g. Bond v. United States*, 572 U.S. 844, 848 (2014) ("Because our constitutional structure leaves local criminal activity primarily to the States, we have generally declined to read federal law as intruding on that responsibility, unless Congress has clearly indicated that the law should have such reach."); *see also Ruan v. United States*, 142 S. Ct. 2370 (2022) (rejecting an effort to water down scienter requirements in Controlled Substances Act cases in a way that would give the federal government a larger role in regulating doctor prescribing conduct); *McDonnell v. United States*, 579 U.S. 550, 569, 574 (2016) (rejecting an attempt to broadly construe a federal criminal statute to reach conduct by a State official). And that is particularly so where the Department of Justice has sought to use federal criminal law to intrude into areas of State authority. *See, e.g., Kelly v. United States*, 140 S. Ct. 1565, 1574 (2020) (federal wire fraud and mail fraud statutes are not meant to create standards of good government for state officials); *McDonnell*, 579 U.S. at 576–77 (States have the primary responsibility for regulating the conduct of State officials).

      Yet here, as Mt. Lebanon and Brighton detail in their opening brief, the government seeks to punish the corporate defendants for conduct that clearly related to a State, not a federal, requirement. Despite the government's attempts to argue to the contrary, the PPD standard at issue is not a federal standard. In fact, the government's own witnesses testified that (1) the federal government does not have an average minimum PPD requirement, (11/20/2023 Tr. 163-164), and (2) that noncompliance with a State PPD standard "does not necessarily constitute noncompliance" with federal law, (12/8/2023 Tr. at 214:5). More than that, **a CMS representative** testified that "missing the 2.7 [PPD State standard] on its own would not constitute federal compliance." (*Id.* at 215:10-11.) The government continues to ignore the distinction between DOH's role as a **State**

7

regulator and the functions it performs in connection with its responsibilities under the federal Medicare and Medicaid programs. And it makes no effort to engage with the trial testimony, cited in the opening brief, showing that there was no reasonable likelihood that intermittently low PPD numbers would lead to license revocation or other serious sanctions. Indeed, Mt. Lebanon and Brighton have reported low PPD numbers in the past without suffering any such consequences.

Vague testimony that agencies want the information they receive—whether they use it or not—to be accurate, (*see* ECF No. 421 at 16–17), is not enough to show materiality. Otherwise, any falsehood on a PPD form of any sort could support conviction, which would collapse the materiality and "in connection with" requirements into the more general requirement that a statement be incorrect or false.

Moreover, the government did not call a single DOH surveyor who visited either Mt. Lebanon or Brighton to testify at trial, even though it described them as "professional" surveyors with a medical background. Considering the government's continued claim that PPD forms would have been material to the surveyor's conclusions, it is surprising that the government apparently could not find a single one willing to testify at trial to that effect or as to their observations as to the staffing levels at either facility.

It is also worth noting that the authority the government musters in support its interpretation of "in connection with" requirements is itself minimal, as the government relies heavily on an unpublished Third Circuit and district court opinion, neither of which is precedential. (ECF No. 421 at 26–27) And its materiality citations are similarly unimpressive. (*Id.* at 12–14)

All of which is to say that the government's efforts to rebut Mt. Lebanon and Brighton's analysis on materiality are not persuasive. Nor do they effectively respond to the arguments raised in the Rule 33 motion.

**CONCLUSION**

In sum, the government's Rule 33 briefing fails to grapple with the difference between a motion for a new trial and a motion for judgment of acquittal. Moreover, despite criticizing the defense for "cherry picking" evidence at trial, the government repeatedly fails to acknowledge (let alone respond to) the severe credibility issues of its own witnesses and context that undermine its case. When the trial record is viewed as a whole, as the law requires, the jury's verdicts of conviction are manifestly against the weight of the evidence. This Court should therefore grant Mt. Lebanon and Brighton's motion for a new trial under Rule 33.

Dated: February 7, 2024                           Respectfully Submitted,

*/s/ Colin J. Callahan*
Colin J. Callahan, Esquire
P.A. ID No. 328033
Flannery Georgalis, LLC
707 Grant Street, Suite 2750
Pittsburgh, PA 15219
(412) 339-1336
ccallahan@flannerygeorgalis.com

*Counsel for Defendants Comprehensive Healthcare Management Services, LLC and Mt. Lebanon Operations, LLC*